IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | | |
|---|---|---|
| RONALD L. GOINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:09-00105 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433,

1381-1383f. By Standing Order entered February 6, 2009 (Document No. 4.), this case was referred

to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to

submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C.

§ 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on

the Pleadings. (Document Nos. 17 and 18.)

The Plaintiff, Ronald L. Goins, (hereinafter referred to as "Claimant"), filed applications for

DIB and SSI on October 4, 2006 (protective filing date), alleging disability as of January 26, 2006,

due to lumbar ruptured discs, degenerative arthritis, leg numbness, diabetes, high blood pressure,

and high cholesterol. (Tr. at 13, 53-55, 58, 73-74, 197-200.) The claims were denied initially and

upon reconsideration. (Tr. at 43-45, 46-48, 202-04.) On January 22, 2007, Claimant requested a

hearing before an Administrative Law Judge (ALJ). (Tr. at 39.) The hearing was held on August 21,

2007, before the Honorable Karen B. Peters. (Tr. at 209-54.) By decision dated September 25, 2007,

the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-21.) The ALJ's decision became the final decision of the Commissioner on December 10, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.) Claimant filed the present action seeking judicial review of the administrative decision on February 6, 2009, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520©, 416.920©). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, January 26, 2006. (Tr. at 15, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "obesity, diabetes mellitus, degenerative disc disease of the lumbar spine, and carpal tunnel syndrome (right dominant hand)," which were severe impairments. (Tr. at 15, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light level work as follows:

> [C]laimant has the residual functional capacity to perform less than the full range of light work. Specifically, he can lift up to twenty pounds occasionally and ten pounds frequently; can sit/stand/walk for up to six hours in an eight hour day; would be limited to using his right dominant hand for no more than 1/3 of the day for reaching, repetitive handling, and fine manipulation; should do no climbing; and could occasionally balance, kneel, crouch, crawl and stoop.

(Tr. at 16-17, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 19, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a gate guard, ticket taker, and usher at the light level of exertion. (Tr. at 19-20, Finding No. 10.) On this basis, benefits were denied. (Tr. at 20, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 13, 1958, and was 48 years old at the time of the administrative hearing, August 21, 2007. (Tr. at 19, 53, 197, 214.) Claimant has a ninth grade education and a generalized equivalency diploma, and is able to communicate in English. (Tr. at 19, Finding No. 8; 125; 214.) In the past, he worked as a security officer and school custodian. (Tr. at 19, Finding No. 6; 74-75, 81-83, 215-23.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and summarizes it below in relation to Claimant's arguments.

4

On March 14, 2006, a MRI report indicated that Claimant had mild degenerative disc disease ("DDD")  with mild diffuse bulging of the annulus at L4-5, mild arthritic changes of the facet joints at L4-5, and mild narrowing of the neural foramina at L4-5 resulting from the DDD and arthritic changes. (Tr. at 18, 132.) On January 31, 2006, Claimant complained of lower back pain and numbness down his right leg and right knee. (Tr. at 133-34.) An x-ray of his right knee was normal. (Tr. at 136.)

Claimant treated at Willis Chiropractic from July 31, 2006, through November 15, 2006. (Tr. at 18, 147-54.) As the ALJ noted in his decision, the records were difficult to read but reflected Claimant's complaints of back pain, right lower extremity pain, and numbness, which possibly resulted from a fall in the snow on January 26, 2006. (Tr. at 18, 151.) In an undated letter, Claimant's chiropractor, Randy B. Maxwell, D.C., opined that Claimant's low back condition and leg numbness would affect his ability to lift, push, or pull heavy objects. (Tr. at 18, 182.)

On November 21, 2006, Dr. Rosalind Go, M.D., completed a form Physical Residual Functional Capacity ("RFC") Assessment on which she opined that Claimant's chronic back strain, degenerative arthritis of the spine, and diabetes mellitus, did not prevent Claimant from performing light exertional level work. (Tr. at 155-62.) Dr. Go assessed occasional postural limitations with the exception of never climbing ladders, ropes, or scaffolds; and opined that Claimant should avoid concentrated exposure to temperature extremes and hazards. (Tr. at 157, 159.)

Medical records from Princeton Internists, dated October 2004, through July, 2007, reflected Claimant's history of high cholesterol, hypertension, and diabetes mellitus. (Tr. at 18, 163-73, 183-86.) Medications controlled his cholesterol and hypertension. (Id.) Though his diabetes mellitus was not well controlled, notes indicated that Claimant failed to abide by the recommended diet and take his medications as prescribed. (Id.)

On January 10, 2007, Dr. A. Rafael Gomez, M.D., completed a form RFC Assessment, on which he opined that Claimant was capable of performing light exertional level work with occasional postural limitations, with the exception of never climbing ladders, ropes, or scaffolds and crawling.  (Tr. at 174-76.) Dr. Gomez further opined that Claimant should avoid concentrated exposure to vibration and hazards. (Tr. at 178.)

Claimant was referred to Dr. Tahir I. Rana, M.D., a neurologist, by his physicians at Princeton Internists, for continued complaints of back pain. (Tr. at 18, 183, 187-96.)  Dr Rana first examined Claimant on July 25, 2007. (Tr. at 18, 194-96.) Claimant complained of back pain since 2006, when he slipped and fell at work and landed on his buttocks. (Tr. at 18, 194.) He reported lower back pain with standing for long periods of time and lifting heavy objects. (Id.) Claimant also reported occasional numbness in his right thigh when lifting, standing, or walking for 15 to 20 minutes. (Id.) He described his pain as arthritic type pain in the lower back. (Id.) He also reported occasional burning in his feet and intermittent numbness in his hands. (Id.) Claimant further reported that he woke up at night with numbness in his hands. (Id.)

Dr. Rana conducted a physical exam, which essentially was normal, and a neurological exam. (Tr. at 18, 195.) The neurologic exam revealed that Claimant was oriented and exhibited fluent speech with intact comprehension, naming, and repetition. (Tr. at 18, 195.) His concentration, short and long-term memory, cognitive function, and hearing intact. (Id.) Motor exam revealed normal strength testing in the bilateral extremities except for some give way weakness in the hip flexor due to back pain. (Id.) Sensory exam, too, was intact except for decreased sensation to palpation bilaterally in the thumb and index finger. (Id.) Claimant's gait and tandem gait were normal. (Id.) Dr. Rana assessed chronic back pain, most likely musculoskeletal due to arthritis and degenerative disk disease; intermittent numbness in the hands; and intermittent numbness in the right

anteriolateral thigh, probably meralgia paresthetica. (Tr. at 18, 196.) Dr. Rana ordered an EMG/Nerve Conduction Study, prescribed Lyrica and Flexeril, ordered blood work, and directed that the MRI of his lumbosacral spine be repeated due to Claimant's persistent symptoms. (Id.)

Claimant submitted to the Appeals Council, a Chart Report from Dr. Riaz Uddin Riaz, M.D., a psychiatrist and neurologist, who conducted a psychiatric evaluation of Claimant on October 16, 2007, . (Tr. at 205-08.) Claimant reported to Dr. Riaz that he was nervous, depressed, anxious, irritable, upset easily, preferred to be left alone, and easy to lose his temper. (Tr. at 205.) He indicated that he quit school in the seventh grade and later obtained his GED. (Id.) Claimant indicated that he attended regular classes when in school, that he was able to read and write, and that he obtained two years of electrical training. (Id.) Dr. Riaz observed that Claimant had moderate psychomotor retardation, and appeared anxious and depressed. (Tr. at 206.) Claimant reported that he had difficulty sleeping, that he awoke every couple of hours, and that he had nightmares. (Id.) He also indicated a fair appetite. (Id.) Regarding activities of daily living, Claimant reported that he managed his own self-care, that he cooked and cleaned, and that he shopped sometimes. (Id.) He indicated that he watched television, drove sometimes, and that he liked to hunt but had not hunted for two years. (Id.) He stated that he did not read; visit friends, relatives, or neighbors, or attend church. (Id.)

Mental status examination revealed that Claimant had difficulty relating to the examiner, exhibited a depressed and anxious mood, exhibited a constricted affect, and had non-spontaneous speech. (Tr. at 207.) Claimant reported that he felt worthless, hopeless, and useless all of the time. (Id.) He reported suicidal thoughts off and on, with the most recent having been the morning of the examination. (Id.) Claimant stated that his quality of life was not worth living. (Id.) Claimant also reported that he felt people were against him, talked about him, and watched him. (Id.) Dr. Riaz

noted that Claimant was fully oriented, had difficulty in abstract thinking, was unable to do any of the serial sevens, had good recent and remote memory, had poor concentration and attention, and that his insight and judgment were present. (Id.)

Dr. Riaz diagnosed major depressive disorder, severe; generalized anxiety disorder, moderately severe; and assessed a GAF of 60. (Tr. at 207.) He noted that Claimant's prognosis was poor. (Id.) Dr. Riaz opined that Claimant has

> a combination of physical and emotional problems which make him incapable of gainful employment. He would not be able to interact appropriately with co-workers and supervisors. He would be unable to perform routine repetitive tasks at a sustained level. He is not a suitable candidate for vocational rehabilitation.

(Tr. at 207.) Dr. Riaz recommended that Claimant continue his current treatment plan. (Tr. at 208.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to consider the October 16, 2007, psychiatric examination of Dr. Riaz Riaz, which was submitted to the Appeals Council. (Document No. 17 at 2-3.) Claimant states that Dr. Riaz's report indicated that he suffered from severe major depression and moderately severe anxiety disorder, which rendered him disabled from substantial gainful employment. (Id. at 2.) Claimant alleges that the Appeals Council "made no findings as to whether the report was new or material evidence or if it related to a period of time before the ALJ's decision of September 25, 2007." (Id. at 3.) He asserts that the report constitutes new evidence. (Id.)

The Commissioner argues that the Appeals Council considered the additional evidence and was "not required to articulate its own assessment of additional evidence presented to it by a claimant." (Document No. 18 at 11-12.) Thus, the Commissioner asserts that the "Appeals Council did not err by not providing a more in-depth explanation as to why it found the additional evidence offered by [Claimant] did not serve to alter the ALJ's decision." (Id. at 12.) The Commissioner

further argues that in any event, Dr. Riaz's report does not provide a basis for changing the ALJ's decision. (Id. at 12-14.) The Commissioner asserts that the report is not material because it post-dates the relevant period. (Id. at 12-13.) Thus, the report is not reflective of Claimant's functioning during the period at issue. (Id. at 12-13.) The Commissioner further asserts that even if the report related to the relevant time period, the opinion that Claimant could not work concerned an issue reserved to the Commissioner. (Id. at 13.) Additionally, the Commissioner asserts that Dr. Riaz's conclusion that Claimant could not work based on a combination of physical and mental problems was not supported by his findings. (Id.) Finally, the Commissioner asserts that Dr. Riaz's opinion conflicts with the record evidence, particularly the evidence regarding Claimant's ability to interact appropriately with co-workers and supervisors. (Id. at 14.)

Analysis.

The record shows that Dr. Riaz's report was submitted to the Appeals Council and was made a part of the record that is currently before the Court. (Tr. at 5-8.) The Appeals Council's December 10, 2008, decision stated that the reasons Claimant disagreed with the ALJ's decision "and the additional evidence listed on the enclosed Order of Appeals Council" was considered. (Tr. at 5.) The Appeals Council determined that this information, however, did "not provide a basis for changing the Administrative Law Judge's decision." (Tr. at 6.) The attached Order of the Appeals Council reflects the evidence noted above as evidence received by the Appeals Council and made a part of the record. (Tr. at 8.) In deciding whether to grant review, the Appeals Council "must consider evidence submitted with the request for review . . . 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" Wilkins v. Secretary, 953 F.2d 93, 95-96 (4th Cir. 1991)(en banc)(citations omitted). Evidence is "new" if it is not duplicative or cumulative. See id. at 96. "Evidence is material if there is a reasonable

9

possibility that the new evidence would have changed the outcome." Id.

While the question whether the Appeals Council is required to make findings on evidence submitted after the ALJ's decision is not entirely clear in the Fourth Circuit, this Court found in Short v. Barnhart, Civil Action No. 1:04-0878 (S.D.W.Va. Oct. 4, 2005)(Faber, C.J.), that the Appeals Council is not required to provide an explanation for its consideration of additional evidence. Rather, the Court, in reviewing the ALJ's decision "in the light of evidence which the ALJ never considered, and thus never evaluated or explained," must "determine whether this additional evidence creates a 'conflict,' is 'contradictory,' or 'calls into doubt, any decision grounded in the proper medical reports.'" Id. (citing Camper v. Barnhart, 2005 WL 1995446, *5 (W.D.Va. Aug. 16, 2005)). See also, Delawder v. Astrue, 2009 WL 2423978, *22 (N.D.W.Va. Aug. 6, 2009) (holding that "the regulations do not require the Appeals Council to explain what, if any weight and consideration it gave to the allegedly new and material evidence submitted by the Plaintiff."). Considering evidence which Claimant submitted to the Appeals Council and the Appeals Council included in the record, the Fourth Circuit concluded in Wilkins, 953 F.2d at 96, that courts reviewing decisions of the Social Security Administration must consider "the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Thus, reviewing Courts must consider new evidence which the claimant submits while the decision of the Appeals Council is pending even when the Appeals Council denies the claimant's request for review. See also Adkins v. Barnhart, 2003 WL 21105103, * 5 (S.D.W.Va. May 5, 2003)(Stanley, M.J.).

In the instant case, the additional evidence was considered by the Appeals Council and made a part of the record. The Regulations governing the circumstances under which the Appeals Council

10

is to review an ALJ decision provide that additional evidence will not be considered *unless* the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. § 404.970(b) (2007), Hawker v. Barnhart, 235 F.Supp.2d 445, 445-46 (D. Md. 2002). "Pursuant to the regulations . . . , if additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's decision, the evidence is returned to the claimant, and the claimant is advised about [his] rights to file a new application." Adkins v. Barnhart, 2003 WL 21105103, *5 (S.D.W.Va. May 5, 2003). Thus, in the instant case, the additional evidence was considered by the Appeals Council and made a part of the record, and must have been deemed new and material and related to the period on or before the date of the ALJ's decision.

As stated above, Claimant submitted to the Appeals Council the report from Dr. Riaz of a psychiatric evaluation performed on Claimant three weeks, or 21 days, after the ALJ issued his decision denying benefits. (Tr. at 205-08.) The report reflects Dr. Riaz's diagnoses of severe major depressive disorder, moderately severe generalized anxiety disorder, and a GAF of 60.[1] (Tr. at 207.) Furthermore, the report contains Dr. Riaz's opinion that Claimant was unable to work based on a combination of physical and emotional problems. (Id.) Finally, the report reflects Dr. Riaz's impressions during the mental examination that Claimant exhibited a depressed and anxious mood, a constricted affect, good recent and remote memory, poor concentration and attention, and difficulty in abstract thinking. (Id.)

---

[1]    The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994)

The only evidence before the ALJ regarding any mental abilities was in the form of a neurological exam conducted by Dr. Rana on July 25, 2007. (Tr. at 18, 195.) The exam revealed intact concentration, short and long-term memory, cognitive functioning, and hearing. (Id.) Additionally, Dr. Rana noted that Claimant was oriented fully, that he exhibited fluent speech, and that he had intact comprehension, naming, and repetition. (Id.) The ALJ made no discussion or findings as to any mental impairment or limitation because the record before the ALJ did not support any such findings. The new evidence reflects an opinion rendered nearly three months after Dr. Rana's examination, which indicated that based on the combination of Claimant's physical and mental impairments, Claimant was unable to perform gainful employment. In rendering this opinion however, Dr. Riaz neither conducted a physical examination, nor indicated in his report that he reviewed medical records reflecting Claimant's physical impairments. Regarding the mental impairments, Dr. Riaz opined that Claimant would be unable to interact appropriately with co-workers and supervisors. With the exception of noting that Claimant had difficulty relating to him, Dr. Riaz's report contains no evidence of Claimant's inability to interact appropriately in the workplace. As the Commissioner points out, the evidence before the ALJ reflected Claimant's self-reports on October 23, 2006, that he got along "fine" with authority figures; that he never had been fired or laid off from a job because of problems getting along with others; and that he had no problems getting along with family, friends, neighbors, or others. (Tr. at 98-99.) Contrary to Dr. Rana's findings, Dr. Riaz noted that Claimant's attention and concentration were poor, but consistent with Dr. Rana, found that his memory was intact. Despite diagnosing severe depression and moderately severe anxiety, Dr. Riaz assessed a GAF of 60, which indicates borderline moderate difficulty in social or occupational thinking. A GAF of 61, would have indicated only mild

difficulties.[2] Accordingly, the undersigned finds that Dr. Riaz's diagnoses are conflicting, that his observations differ from the substantial evidence that was before the ALJ, and that his opinion as to Claimant's ability to work is not supported by the findings as stated in his report. Due to these internal inconsistencies, the undersigned therefore, further finds that Dr. Riaz's opinion would not be entitled great weight and that the new evidence does not call into doubt the ALJ's decision.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 17.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 18.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

---

[2] A GAF of 61-70 indicates that the person has some mild symptoms or "some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994)

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), <u>reh'g denied</u>, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 6, 2010.

R. Clarke VanDervort
United States Magistrate Judge